JANET DIGIANNI vs. CONTRIBUTORY RETIREMENT APPEAL
BOARD & another.[1]

Suffolk. October 2, 1995. - November 14, 1995.

Present: LIACOS, C.J., ABRAMS, LYNCH, GREANEY, & FRIED, JJ.

*Retirement. Public Employment*, Retirement. *School and School Committee*, Retirement benefits. *Statute*, Construction. *Estoppel. Words*, "Member."

A member of the State retirement system who entered the service of the Commonwealth in 1977, who was laid off in 1981 and received a refund of her accumulated retirement deductions, who was reemployed in 1982 and repaid the withdrawn contributions as then required as a condition of reemployment, was not a new employee "who entered the service of the Commonwealth on or after January [1, 1979]" within the meaning of G. L. c. 32 § 22 (1) (*b* ½), and thus was not required to contribute an additional two per cent of her annual salary in excess of thirty thousand dollars to the retirement system. [352-356]

CIVIL ACTION commenced in the Superior Court Department on May 7, 1993.

The case was heard by *Isaac Borenstein*, J., on motions for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Judy A. Levenson*, Assistant Attorney General, for the defendants.

*Sandra Quinn* for the plaintiff.

ABRAMS, J. The Contributory Retirement Appeal Board (CRAB) and Teachers' Retirement Board (TRB) appeal from a Superior Court judgment under G. L. c. 30A, § 14 (1994 ed.), reversing CRAB's decision that Janet DiGianni must contribute an additional two per cent of her annual sal-

---

[1]Massachusetts Teachers' Retirement Board.

ary in excess of $30,000 to the retirement system under
G. L. c. 32, § 22 (1) (*b* ½) (1994 ed.), which requires that
"[f]or any member . . . who entered the service of the com-
monwealth . . . on or after January [1, 1979], the treasurer
. . . shall withhold on each pay day, in addition to the
amounts withheld pursuant to paragraph (b), an additional
two per cent of such member's regular compensation over
thirty thousand dollars." The sole issue for decision is
whether DiGianni is a "member . . . who entered the service
of the commonwealth or a political subdivision thereof on or
after January [1, 1979]." We transferred the case here on
our own motion. We affirm the judgment of the Superior
Court.

The relevant facts are not in dispute. Janet DiGianni
worked as a teacher in the Pathfinder Regional Vocational
School System from September, 1977, until June, 1979. She
taught in the Billerica public schools from September, 1979,
until June, 1981. During the time from September, 1977, un-
til June, 1979, DiGianni was a member of the teachers' re-
tirement system and contributed seven per cent of her salary
to the system. When she was laid off in June, 1981, DiGianni
requested and received a refund of her accumulated retire-
ment deductions plus interest pursuant to G. L. c. 32,
§ 10 (4).[2] Accompanying her refund check was a preprinted
notice informing DiGianni that, pursuant to G. L. c. 32,
§ 3 (6) (*c*), she would have to repay the withdrawn contribu-
tions with interest as a condition of reemployment as a public
school teacher within two years.[3] DiGianni was reemployed
as a public school teacher in March, 1982, this time at the
Shawsheen Vocational Technical School. She again became

---

[2] General Laws c. 32, § 10 (4) (1994 ed.), provides, *in pertinent part:*
"Any member not entitled to a retirement allowance . . . shall be paid the
amount of his accumulated total deductions as provided for in subdivision
(1) of section eleven."

[3] General Laws c. 32, § 3 (6) (*c*), as it then existed, required a former
member to repay all withdrawn deductions as a condition of reemploy-
ment. It was amended by St. 1982, c. 630, § 10. Repayment is now
optional.

a member of the teachers' retirement system with a contribution rate of seven per cent. As required, DiGianni repaid the withdrawn contributions with interest.

In 1988, the Legislature enacted the disputed provision, G. L. c. 32, § 22 (1) (*b* ½). Since January, 1988, TRB has been deducting an additional two per cent of DiGianni's salary in excess of $30,000. DiGianni requested an exemption from the additional two per cent contribution because she "entered the service of the commonwealth" prior to January 1, 1979. TRB refused, stating that, "[a]lthough [DiGianni] entered the system in 1977, the fact that [she] applied for and received an optional refund in 1981 negates [her] 1977 start date. [DiGianni's] new start date is March, [1982,] when [she] returned to teaching." DiGianni appealed from TRB's decision to CRAB which affirmed, basing its decision on the fact that DiGianni voluntarily withdrew her contributions.

DiGianni contends that she entered the service of the Commonwealth in September, 1977, when she originally was employed as a public school teacher and originally joined the teachers' retirement system. TRB and CRAB contend that DiGianni lost the right to claim the 1977 start date when she voluntarily severed her relationship with the teachers' retirement system by withdrawing her accumulated contributions.[4]

General Laws c. 32, § 1 (1994 ed.), defines "[m]ember" as "any employee included in the . . . teachers' retirement system." "Service" is defined as "service as an employee in any governmental unit for which regular compensation is paid." *Id.* Thus, a "member . . . who entered into the service of the commonwealth or a political subdivision thereof on or before January [1, 1979,]" is an employee included in the teachers' retirement system who entered into the service of and was paid regular compensation by the Commonwealth or a political subdivision thereof prior to January 1, 1979. It is not dis-

_____

[4]DiGianni could have retained member status by declining to withdraw her accumulated deductions from the retirement system during her layoff. G. L. c. 32, § 3 (6) (*b*).

puted that DiGianni fits this definition. Cf. *Glorioso* v. *Retirement Bd. of Wellesley*, 401 Mass. 648, 652 (1988) (any person who performed compensated work prior to June 30, 1939, is an employee; retiree entitled to benefits under G. L. c. 32, § 58); *Cardellicchio* v. *Board of Retirement of Natick*, 391 Mass. 760, 764 (1984) (retiree, who was compensated eighty cents by the town for work performed before June 30, 1939, was employed by the town prior to June 30, 1939, and, therefore, eligible for noncontributory retirement benefits under G. L. c. 32, § 58). See also *Retirement Bd. of Concord* v. *Colleran*, 34 Mass. App. Ct. 486, 489 (1993) (an employee who first rendered service for pay part-time in 1977 was employed before January 1, 1978, for purposes of G. L. c. 32, § 5 [1] [*m*]). What is disputed is the effect of DiGianni's withdrawal from the retirement system on her status as a "member . . . who entered into the service of the commonwealth . . . on or before January [1, 1979]." DiGianni argues that her subsequent withdrawal does not affect her status. We agree.

The statute in question is ambiguous. Cf. *McIntire* v. *Contributory Retirement Appeal Bd.*, 417 Mass. 35, 37 (1994) (holding that the wording of G. L. c. 32, § 22 [1] [*b*], was ambiguous as to whether the date of commencement of employment with the commonwealth or the date of entry into the retirement system determines the rate of contribution). We, therefore, look to legislative history. See *Aldoupolis* v. *Commonwealth*, 386 Mass. 260, 264, cert. denied, 459 U.S. 864 (1982). General Laws c. 32, § 22 (1) (*b* ½), was enacted by St. 1987, c. 697, § 64, which simultaneously repealed a $30,000 cap on the salary on which pension benefits were calculated. The cap had been added by St. 1978, c. 367, § 50, and applied only to persons who entered the service of the Commonwealth on or after January 1, 1979. The date of membership in the retirement system was irrelevant for purposes of determining whether the cap applied. The timing of the repeal of the cap and the requirement for an additional two per cent contribution, and the fact that both turned on salary amounts above $30,000, indicate an

intention on the part of the Legislature to require the additional two per cent contribution only from the population previously affected by the cap. Compare G. L. c. 32, § 22 (1) (*b*), the statute at issue in *McIntire, supra*. Its purpose was revenue raising and, therefore, it was intended to reach as many employees as was constitutionally permissible. See *Opinion of the Justices*, 364 Mass. 847 (1973). Because DiGianni entered the service of the Commonwealth before January 1, 1979, she would not have been affected by the cap even after she subsequently withdrew from the retirement system. The additional two per cent contribution under G. L. c. 32, § 22 (1) (*b* ½), should similarly not apply to DiGianni.

TRB and CRAB rely on *McIntire* v. *Contributory Retirement Appeal Bd., supra*, and *Manning* v. *Contributory Retirement Appeal Bd.*, 29 Mass. App. Ct. 253 (1990). In *McIntire*, we held that a plaintiff who had worked part-time from 1971 through 1976 could not claim the rate of contribution of an employee who entered service full-time pre-1975. In *Manning*, the Appeals Court held that the buy-back of creditable service for prior part-time service does not establish the date of membership in the retirement system. DiGianni's situation is factually distinguishable from those of the plaintiffs in *McIntire* and *Manning*. DiGianni, unlike McIntire and Manning, was eligible for and had been a member of the teachers' retirement system before the date the change in statute became effective. DiGianni was required to repay the withdrawn amount in one lump sum with interest as a condition of reemployment within two years. The teachers in *McIntire* and *Manning*, on the other hand, voluntarily purchased creditable service for a time during which they had not been members of and had not been contributing to the teachers' retirement system. This difference also distinguishes DiGianni's situation from *Leary* v. *Contributory Retirement Appeal Bd., ante* 344 (1995), where we held that voluntary purchase of creditable service for out-of-State employment does not entitle a member to treat the out-

of-State service as regular compensation for purposes of calculating his retirement benefits.

Further, DiGianni, unlike the plaintiff in *Leary*, had a reasonable expectation that she would be treated as a pre-1979 employee. When DiGianni withdrew her accumulated deductions, TRB notified her that "[a] member who withdraws his funds, must, as a condition [of] reemployment, immediately return in one sum an amount equal to the accumulated regular deductions withdrawn with regular interest thereon to the date of reemployment if reemploy[ed] as a teacher in the public schools of Massachusetts within two years from the date of his last separation therefrom, provided the service is subject to membership in the teachers' retirement system. If a former member is reemployed as a teacher in the public schools of Massachusetts after two years from the date of last separation therefrom, his status will be that of a new employee not entitled to credit for previous service . . . ." It was reasonable for DiGianni and others similarly situated to infer from this notice that if they met the stated conditions they would not be treated as new employees. Although it is not expressly stated in the statute, the notice implies that an employee who repays the withdrawn deductions is entitled to the same benefits to which he was previously entitled. These reasonable expectations are entitled to respect. See *Colo* v. *Contributory Retirement Appeal Bd.*, 37 Mass. App. Ct. 185, 189 (1994).

The preprinted notice indicates that, in 1981, TRB shared DiGianni's expectation that if she were reemployed within two years and if she repaid the withdrawn deductions as mandated, she would be treated as if she never left the employ of the Commonwealth. This view, rather than the view TRB currently espouses, is entitled to deference. See *Cleary* v. *Cardullo's, Inc.*, 347 Mass. 337, 343 (1964) ("Significance in interpretation may be given to a consistent, long continued administrative application of an ambiguous statute, . . . especially if the interpretation is contemporaneous with the enactment" [citations omitted]).

TRB argues that binding them to an implied statement from the 1981 notice impermissibly applies estoppel against a government agency. See *Risk Management Found. of Harvard Medical Insts., Inc.* v. *Commissioner of Ins.*, 407 Mass. 498, 510 (1990). Estoppel is inapplicable, however, where a prior agency statement is being used to show legislative intent rather than a misrepresentation on the part of the agency or actions contrary to the statute.

We think that there is no rational distinction between leaving the monies in the retirement system during the lay-off period and repaying the total amount withdrawn plus interest on rehire within two years. We conclude that the Legislature did not intend persons who entered the service of the Commonwealth prior to 1979 and were later laid off, reemployed within two years; and required to repay all withdrawn deductions with interest to be within the ambit of G. L. c. 32, § 22 (1) (*b* ½). The judgment of the Superior Court is affirmed.

*Judgment affirmed.*