Sosman, J.
Plaintiff Everett Retirement Board (the Retirement Board) brought the present action seeking review of the decision of the Contributory Retirement Appeal Board (CRAB) awarding superannuation retirement benefits to Edward Devine. The parties have submitted the administrative record and their respective briefs on the merits. For the following reasons, the court hereby vacates the decision of CRAB and remands the matter to CRAB for further proceedings in accordance with this opinion.

Facts

The findings of fact of the Administrative Law Judge (adopted by CRAB) are as follows:
Edward Devine was appointed each year between February 1, 1968 and January 31, 1979 as a member of the Elverett Board of Health. His work for the Board of Health was part-time, with as few as one to two meetings per month plus two to three days work on budget matters. His compensation for this work was $799.82 per year. Devine was not a member of the Everett Retirement System during the time that he was on the Board of Health.
In September 1986, Devine began working full-time as a claims agent in the Everett Legal Department. He became a member of the Everett Retirement System for the first time on May 25, 1988.
At its regular monthly meeting on February 28, 1989, the Retirement Board voted “to grant full time service to employees who work over 20 hrs. weekly and *483 part time service [sic] to employees who worked under 20 hrs.”
On December 4, 1990, the Retirement Board approved Devine’s purchase of creditable service for his eleven years on the Board of Health and the one year and eight months he had served with the Legal Department before becoming a member of the Retirement System. To buy back this time, Devine paid $2,492.23.
After speaking with a member of the Retirement Board, Devine understood that he was then eligible for superannuation retirement. He filed for superannuation retirement on or about January 17, 1991 seeking an effective date of retirement of February 1,1991.His three highest years of compensation were the three years leading up to his proposed retirement.[1]
On February 27, 1991, the Retirement Board voted to grant 50% creditable service for each year served as a member of the Board of Assessors and to “grant 25% creditable service for each year served as a [sic] appointed board member for all other boards within the City.” This policy was to be applicable “to members prior to Jan. 25, 1991.”
By letter dated February 27, 1991, the Retirement Board notified Devine that it had applied this percentage to the Board of Health time he had purchased, which reduced that time from eleven years to two years and nine months of creditable service. Adding those years of creditable service to his years of creditable service from his full-time position with the legal department (four years and four months) gave him a total of seven years and one month of creditable service. As Devine then did not have the requisite ten years creditable service, he was not eligible for superannuation retirement but was only eligible for a refund of his accumulated deductions.

Procedural History

Devine appealed the decision of the Retirement Board to CRAB. After evidentiary hearing, the Administrative Magistrate issued her decision on November 16, 1992. Based on the above facts, she concluded that the decision of the Retirement Board should be reversed. First, she held that the Board was “estopped” from applying its February 27, 1991 rule of 25% retroactively to its December 1990 approval of Devine’s buy back of creditable service. Second, she held that the Board’s 1989 policy to grant only part-time creditable service to those employees who work less than twenty hours per week “cannot be applied retroactively to Mr. Devine whose membership rights and privileges are those in place in 1988 when he joined the Everett Retirement System.” Accordingly, the Administrative Magistrate ordered that Devine be retired on a computation giving him fifteen years and four months creditable service.
On April 13, 1993, CRAB adopted the Administrative Magistrate’s findings of fact and similarly ruled that Devine was entitled to fifteen years and four months of creditable service. CRAB’s reasoning was as follows:
It is clear that the [Retirement Board] granted [Devine] twelve years and eight months of creditable service. While a board is required to correct errors in its records, the action of the [Retirement Board] with respect to [Devine] was the application of a newly adopted policy rather than the correction of an error. Absent error in the grant of creditable service upon a buy back of such service, nothing in G.L.c. 32 allows a retirement board to reduce the amount of creditable service that it has granted. The creditable service granted to [Devine] on December 4, 1990 when added to the service granted for his full time employment subsequent to September 22, 1986 equals fifteen years and four months.
CRAB thus ordered that Devine be retired for superannuation pursuant to his application and that his retirement allowance be calculated based on fifteen years and four months creditable service.
The present action for judicial review followed.

Discussion

The Retirement Board contends that CRAB’s decision is based on an error of law in that G.L.c. 32, §4(2) (c) does not allow a member any award of creditable service for previous part-time work performed while the member was ineligible for membership, unless the Retirement Board has adopted rules and regulations for doing so that have been approved by the actuary. The statute reads as follows:
In the case of any employee of any governmental unit who is a member of the retirement system pertaining thereto, the board may allow credit, upon whatever proportionate basis it shall determine under appropriate rules and regulations which shall be subject to the approval of the actuary, for any previous period of part-time, provisional, temporary, temporary provisional, seasonal or intermittent employment or service rendered by him after such a retirement system becomes operative and while he was not eligible for membership
G.L.c. 32, §4(2)(c).[2] Thus, under §4(2)(c), a retirement board “may” give a member credit for a prior period of part-time service during which the employee was ineligible for membership, but it is not required to.[3]
However, a retirement board’s authority to award such credit is contingent upon the adoption of rules and regulations which have been approved by the actuary. In the present cáse, the Retirement Board has not adopted any such rules, and it has not obtained any approval from the actuary.[4] As such, awarding creditable service for a prior period of part-time employment during which time the member was not eligible for membership would be beyond the authority of the Retirement Board.[5]
*484 What is unclear on this record, however, and not addressed by CRAB in its decision, is whether Devine was ineligible for membership in the retirement system during the time that he worked for the Board of Health. If he was then ineligible for membership, his attempt to get credit for that time as creditable service would be subject to §4(2)(c), which would not allow such an award in the absence of rules or regulations that had been approved by the actuary. Thus, if he was ineligible for membership during those years, the Retirement Board lacked the authority to give him credit for that period of service and no credit for that time period could be included in the calculation of his eligibility for superannuation retirement.[6]
If, on the other hand, Devine was eligible for membership during those years but simply did not elect to become a member, his buy back of that time would be underG.L.c. 32, §3(3). When a member joins later than he or she could have, the employee may get credit for prior service by paying the amount that would have been withheld had he become a member at the earliest opportunity (plus interest). Id. Once that payment is made, “such member shall be entitled to all creditable service to which he would have been entitled had he joined the system when first eligible to become a member.” Id. Thus, if Devine was eligible for membership back when he was first appointed to the Board of Health, his payment of the entire amount of that contribution in December 1990 gave him the same rights he would have had if he had joined the retirement system back in 1968. As a member, years of creditable service could not be reduced merely because the member worked part-time, and Devine would be entitled to a full year creditable service for each year he served on the Board of Health. See Gallagher, supra.[7]
The critical question is whether Devine was or was not eligible for membership in the retirement system back in 1968 when he was first appointed to the Board of Health. The Retirement Board, although basing its argument on §4(2) (c), nowhere acknowledges that, for that section to be applicable, the member must have been ineligible during the time period in question. Nowhere does it assert that Devine was ineligible for membership in the retirement system during the time he served on the Board of Health. No findings on that subject were made by either CRAB or the Administrative Judge, as no analysis of the import of §4(2) (c) was presented below. Devine does not address that issue in his brief before this court.
If Devine was eligible for membership in the retirement system when he served on the Board of Health, the court would affirm CRAB’s decision awarding Devine a full year’s creditable service for each year served on the Board of Health. If he was not then eligible for membership, the court would reverse CRAB’s decision and reinstate the Retirement Board’s decision denying Devine a superannuation retirement. However, the court does not have before it the parties’ respective positions on the critical issue of whether Devine was or was not eligible for membership in the retirement system back when he served on the Board of Health.
It would be preferable for CRAB to determine that issue in the first instance and the matter is therefore remanded to CRAB for further proceedings (if necessary) to determine whether Devine was eligible for membership in the retirement system during the years that he served on the Board of Health.[8] This court will retain jurisdiction and enter judgment upon being advised of the agency’s decision (or the parties’ agreement) on this issue.

ORDER

For the foregoing reasons, the decision of the Contributory Retirement Appeal Board is VACATED and the matter is REMANDED to the Contributory Retirement Appeal Board for further proceedings consistent with this opinion.

According to the exhibits, he had an average compensation of $20,708.41 for those fined three years. At Devine’s age and with the claimed number of years of creditable service, that would give Devine a monthly retirement allowance of $445.50.

This portion of the statute read the same back in 1988 when Devine first became a member.

Compare other subsections of §4 which use the term “shall” in describing the steps a retirement board is to take. See, e.g., §4(2)(b) (the board “shall fix and determine how much service in any calendar year is equivalent to a year of service” and “shall fix and determine the amount of creditable prior service”). The only subsection to use the permissive “may” is §4(2) (c).

The February 1,1991 rule giving a member of a City board one-quarter of a year of creditable service for each year on the board appears to be the first attempt at such a rule (although as passed it does not mention §4(2) (c) or make any reference to the members prior period of ineligibility). Application of that rule to Devine’s years of employment gave him less than the ten years creditable service needed for superannuation retirement. The present record is unclear as to whether even that rule was ever approved by the actuary. If it was not so approved (or if it was not intended to apply to a case under §4(2) (c)), then Devine would not get even partial credit for the years he was on the Board of Health and would have even fewer years total creditable service.

This interpretation of §4(2) (c) is not controlled by Gallagher v. Contributory Retirement Appeal Board, 4 Mass.App.Ct. 1 (1976), or O’Brien v. Contributory Retirement Appeal Board, 27 Mass.App.Ct. 1124 (1989), both of which pertained to creditable service time for part-time work performed while the employee was a member of the retirement system. That issue is not governed by §4(2) (c), as pointed out in Gallagher itself. 4 Mass.App.Ct. at 10-11. The question in the present case is an award of creditable service for a period of time prior to becoming a member, an issue that is covered by §4(2).

This result can not be avoided by invoking the doctrine of estoppel. The court is reluctant to apply principles of estoppel to public entities where to do so would negate requirements of law intended to protect the public interest. Phipps Products Corp. v. Massachusetts Bay Transportation Authority, 387 Mass. 687, 693 (1982). Numerous other cases have held that the doctrine of estoppel can not normally be *485 invoked against a governmental entity. See Cranberry Growers Service, Inc. v. Town of Duxbury, 415 Mass. 354, 356 (1993); Risk Management Foundation of the Harvard Medical Institutons, Inc. v. Commissioner of Insurance, 407 Mass. 498, 509-10 (1990). LaBarge v. Chief Administrative Justice of the Trial Court, 402 Mass. 462, 468-69 (1988): Langlitz v. Board of Registration of Chiropractors, 396 Mass. 374, 378 (1985); Holahan v. City of Medford, 394 Mass. 186, 191 (1985); Harrington v. Fall River Housing Authority, 27 Mass.App.Ct.301, 308 (1989). Here, the Administrative Magistrate found “estoppel” in the Retirement Board’s approval of Devine’s buy back of his prior years of service. If that buy back was in fact unauthorized, the Retirement Board’s unauthorized approval of it can not be given estoppel effect. To do so would undermine the legislative directive that creditable service for part-time work during a time that the member was not eligible can only be granted where there are rules and regulations approved by the actuary. There is a strong public interest in the sound administration of pension funds, and the statutory condition of prior approval by the actuary serves that interest. Moreover, estoppel itself is an equitable doctrine intended to avoid injustice. Here, any injustice resulting from the Retirement Board’s unauthorized approval of Devine’s buy back of time can be remedied by refunding to him the relatively minor portion of his contribution that was attributable to those prior years.

The amount of the retirement allowance could be adjusted to reflect the fact that the member worked part-time during some or all of his years of creditable service, but that adjustment in the allowance would have to be based on rules and regulations that had been approved by the actuary. G.L.c. 32, §5(3)(c); Gallagher, 4 Mass.App.Ct. at 11. Even if a board has adopted and the actuary has approved such rules (neither of which appears to have happened in the present case), nothing in §5(3) (c) would reduce the number of years of creditable service for purposes of determining eligibility for superannuation retirement. The size of the annual allowance itself is the only thing that may be adjusted to reflect the part-time nature of the member’s work.

If the parties are in agreement as to whether Devine was or was not eligible for membership during those years, they may report that agreement to the court without the need for further proceedings before the agency.